COMMONWEALTH *vs.* FRANCIS F. SOFFEN.

Hampden. December 6, 1978. — March 6, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Assistance of counsel, Plea. *Conflict of Interest. Homicide.*

The defendant in a criminal case failed to establish either a genuine conflict of interest on the part of his attorneys or any material prejudice resulting from a more tenuous conflict. [435-440]

The defendant's admissions at the time he entered pleas of guilty of murder in the second degree that he had shot one victim twice in the head and the other victim six times in the head and deposited one body in a river and the other in the trunk of a car were sufficient to establish that the defendant acted with malice aforethought, and his pleas were therefore voluntary within the meaning of *Henderson* v. *Morgan,* 426 U.S. 637 (1976). [440-441]

During a hearing on pleas of guilty of murder in the second degree the defendant's affirmative response to a statement by the prosecutor

---

was a sufficient admission of facts to sustain his pleas of guilty without an express statement by the defendant detailing the crimes involved. [441-442]

FIVE INDICTMENTS found and returned in the Superior Court, one on March 6, 1972, one on March 15, 1972, one on March 17, 1972, and two on September 13, 1972.

Pleas of guilty were received by *Dwyer*, J., and a motion for leave to withdraw the pleas of guilty, or for a new trial, was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Bernard Grossberg* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, Francis F. Soffen, was indicted on three counts of armed robbery while masked and two counts of murder in the first degree. At his arraignments on all these charges, the defendant pleaded not guilty. On March 6, 1973, the date set for trial on one of the murder indictments, the defendant retracted his earlier pleas and offered pleas of guilty to the armed robberies while masked and to so much of the murder indictments as charged murder in the second degree. A Superior Court judge accepted the pleas and sentenced the defendant to two terms of life imprisonment for the murders and three terms of eighteen to twenty years for the armed robberies. The sentences were to be served concurrently.

In May of 1976, the defendant filed a motion to withdraw his guilty pleas or, in the alternative, for a new trial, arguing: (1) that he was denied effective assistance of counsel because of conflicts of interest on the part of his attorneys; and (2) that his pleas to the murder charges were involuntary in that he had not been apprised of the elements constituting murder in the second degree. After a hearing, a Superior Court judge denied the defendant's motion. This court granted the defendant's application for direct appellate review. We discern no error in the proceedings below, and accordingly, affirm.

We include the facts in our discussion of the defendant's contentions on appeal.

1. *Conflicts of interest.* Soffen was charged with the three armed robberies in March of 1972. Among his codefendants were Gary Dube, Steven Perrot, Robert Neilson, Louis Sweenor, and Edward Uschman. In September of 1972, Soffen was indicted for the murders of Dube and Perrot.[1] The Commonwealth maintains that these murders were both retaliatory and preventive, as Dube had testified against Soffen before the grand jury, and Perrot had, at some time, also expressed his willingness to talk.

Soffen retained Mr. Efrem Gordon to represent him on all the charged offenses. Mr. Gordon, however, asked to be disqualified from the Dube murder case, due to a potential conflict of interest (discussed *infra*). The judge granted Mr. Gordon's request and appointed Mr. John Donahue to represent the defendant.

The following conflicts of interest are alleged: (1) Mr. Gordon at one time represented Dube in a bank robbery case; it is unclear from the record whether the defendant participated in this particular bank robbery; (2) Mr. Murray Shulman, an attorney employed by Mr. Gordon, also represented Dube on various criminal charges, unrelated to the cases now before us; (3) Mr. Gordon represented Neilson and Sweenor, Soffen's codefendants, at their probable cause hearings; and (4) Mr. Elio Bellucci, who was a law partner of Mr. Donahue's,[2] represented Edward Sabbato, a material witness in the Perrot murder case; Mr. Bellucci's representation of Sabbato included advis-

---

[1] Uschman was a codefendant in the Dube murder case and a material witness for the Commonwealth with respect to all the charges involved in this appeal. Neilson was a codefendant in the Perrot murder. However, it does not appear that he gave any statements to the police or prosecutors, or that he would have been called to testify had any of these cases gone to trial.

[2] Mr. Bellucci's professional association with Mr. Donahue ended approximately two and one-half months before the defendant offered his guilty pleas.

ing him in his capacity as a grand jury witness against the defendant.[3] We have examined the record with the attention to detail that its complexity necessitates. However, we conclude that there existed no constitutional infirmity in the defendant's guilty pleas by reason of conflict of interest on the part of his attorneys. Our reasoning is as follows.

The Sixth and Fourteenth Amendments to the Constitution of the United States and art. 12 of our Declaration of Rights guarantee a criminal defendant the assistance of an attorney who is unimpaired and unrestrained by commitments to others. *Commonwealth* v. *Davis,* 376 Mass. 777, 780-781 (1978). *Glasser* v. *United States,* 315 U.S. 60 (1942). It is well settled that this right attaches to that stage of the criminal process during which the defendant is deciding how to plead. See *Commonwealth* v. *Bolduc,* 375 Mass. 530, 539 (1978); *Boyd* v. *Dutton,* 405 U.S. 1 (1972); *White* v. *Maryland,* 373 U.S. 59, 60 (1963); *Von Moltke* v. *Gillies,* 332 U.S. 708 (1948) (plurality opinion). However, although undivided allegiance and faith-

---

[3] The defendant also alleges that Mr. Shulman either represented, or had a "serious social relationship," with the witness Uschman. If the defendant's allegation were true, we might be required to reverse and grant the defendant's motion, as it is apparent from the record that Uschman's materiality as a witness was not confined to the Dube murder case. However, Mr. Shulman testified at the hearing on the defendant's motion to withdraw his guilty pleas that he never represented Uschman and that he had met Uschman only once or twice when they were both in the company of the defendant. The judge stated that he believed Mr. Shulman's testimony in this regard.

The defendant maintains that the evidence establishing Mr. Shulman's relationship with Uschman is included in the transcript of a conference held between the district attorney and Uschman in July of 1972. The Commonwealth consistently refused to produce this transcript, and it was never made part of the record. Thus, the defendant asked this court to impound the transcript, review its contents, and expand the record to include it if its contents proved material. We have reviewed the transcript and found no evidence to support the defendant's allegations. We therefore deny his motion to expand the record and decline to consider any information included in the transcript in our deliberations with respect to this appeal.

ful service to a client are crucial to the integrity of the whole forensic process, see *Commonwealth* v. *Leslie,* 376 Mass. 647, 652 (1978), the burden lies with the defendant to prove both the existence and precise character of an alleged conflict of interest if he wishes to vitiate the results of prior proceedings. This can be done either by referring to the record, or by introducing evidence extrinsic to court proceedings. See *Commonwealth* v. *Geraway,* 364 Mass. 168 (1973); *Glasser* v. *United States, supra* at 67-69. Once a genuine conflict is shown, there is no additional requirement that prejudice be proved. *Commonwealth* v. *Davis, supra* at 781; *Commonwealth* v. *Wright,* 376 Mass. 725, 730 (1978); *Commonwealth* v. *Leslie, supra* at 651; *Holloway* v. *Arkansas,* 435 U.S. 475 (1978). Moreover, if a more tenuous conflict appears, we might still reverse the judgment on a showing of material prejudice. See *Commonwealth* v. *Leslie, supra* at 652; *Miller* v. *United States,* 564 F.2d 103, 106-107 (1st Cir. 1977), cert. denied, 435 U.S. 931 (1978). With these principles in mind, we now turn to the defendant's contentions.

That Messrs. Gordon and Shulman at one time represented Dube is insufficient to sustain a claim of conflict of interest. At the outset, we note that Mr. Gordon did not represent the defendant in the Dube murder case, although that fact is not crucial to our resolution of the issue. Rather, Mr. Gordon had himself disqualified from such representation specifically in order to assuage suspicions as to his loyalty to Soffen and to preclude any subconscious effect that his prior professional commitment might have had. Moreover, although again not crucial, Mr. Gordon testified, and the judge found as fact, that Mr. Gordon's office did not represent Dube in his capacity as a grand jury witness against the defendant. We discuss these factors only because they strengthen our ultimate conclusion that no genuine conflict of interest has been proved. They are not crucial because the constitutional guaranty is intended to prevent a defendant's attorney from being hampered by contemporaneous divided loyal-

ties or by having acquired privileged information which inhibits him in his representation of the defendant. See *Commonwealth* v. *Smith*, 362 Mass. 782, 783-784 (1973). Thus, the only factors crucial to this particular allegation vis-à-vis the defendant's lawyer, Mr. Gordon, are that Dube died in May of 1972 and that Mr. Gordon had not yet entered his appearances on the defendant's behalf. In fact, the connection between Mr. Gordon and Dube ceased months before Mr. Gordon's representation of the defendant began. He therefore owed no continuing duty of loyalty to Dube at the time of the defendant's guilty pleas, and the defendant's claim of conflict of interest must fail. See *Commonwealth* v. *Wright*, 376 Mass. 725 (1978); *United States* v. *Donatelli*, 484 F.2d 505 (1st Cir. 1973).[4]

That Mr. Gordon represented Soffen's codefendants at their probable cause hearings similarly fails to demonstrate a conflict of interest. The existence of conflicting interests will not be inferred from the mere fact of joint representation. Rather, the burden lies with the defendant to prove, without relying on speculation, that a true conflict existed. *Commonwealth* v. *Davis, supra* at 781. *Commonwealth* v. *Adams*, 374 Mass. 722, 731 (1978). *Englehart* v. *Commonwealth*, 353 Mass. 561, 562, cert. denied, 393 U.S. 886 (1968). *Holloway* v. *Arkansas, supra* at 482. *United States* v. *Foster*, 469 F.2d 1, 4 (1st Cir. 1972).

The defendant has made no effort to describe exactly how the joint representation infused his attorney with conflicting loyalties. There is no evidence that either Neilson or Sweenor had interests at odds with those of the

---

[4] If either Mr. Gordon or Mr. Shulman had had a personal commitment to Dube, i.e., one derived from friendship or kinship, our ruling might well be different. There would then exist an obvious risk that Mr. Gordon's advice to the defendant was neither entirely objective nor in the defendant's best interests. However, we are not now faced with such a situation. Rather, Mr. Gordon's relationship with the victim, Dube, was purely of a professional nature and the same risks do not obtain.

defendant at the time of the joint representation. More-
over, the judge below found that both the defendant and
Neilson were informed of their right to have separate
counsel and asked whether they wished to proceed with
Mr. Gordon nonetheless. Each responded affirmatively.
In fact, Mr. Gordon testified that he represented Neilson
at the defendant's request, and the judge regarded his
testimony as credible. It is not entirely clear from the
record whether Mr. Gordon ever represented Sweenor.
Mr. Gordon testified that it was possible, but that he
could not remember having done so. In any event, the
judge below found that, if Mr. Gordon did represent
Sweenor at the probable cause hearing, he did so at the
defendant's request. We have reviewed the record and
conclude that the judge's findings are supported by the
evidence. As such, they, coupled with the defendant's fail-
ure to explain the nature of the alleged conflict, render
the defendant's assertions devoid of constitutional im-
port.

We now turn to the defendant's allegations with re-
spect to Mr. Donahue. Mr. Donahue was appointed on
September 26, 1972, to represent the defendant in the
Dube murder case. The defendant objected to Mr. Dona-
hue's appointment at that time and at several points
thereafter,[5] because Mr. Bellucci, referred to earlier, was
representing a material witness in the Perrot murder.
While the more sensible practice in such a situation
might be to appoint a different attorney, we do not think
that the judge's failure to do so in this case constitutes
reversible error.

Although there are situations in which a single firm's
representation of both a defendant and a witness for the
prosecution against the defendant involve the potential

[5] The defendant ultimately retained a second lawyer, Mr. Conrad W.
Fisher, to represent him in the Dube murder case. Mr. Fisher's repre-
sentation of the defendant began approximately ten days before the
defendant offered his pleas of guilty, and plays no role in the instant
appeal.

for divided loyalty, see, e.g., *Commonwealth* v. *Geraway*, *supra*, this is not one. Those cases typically involve representation of an unsentenced prosecution witness who testifies in the same matter in which the firm represents the defendant. In the instant case, Sabbato was neither material to nor connected with the case in which Mr. Donahue was involved. The defendant argues, nevertheless, that the "web of circumstances and overlapping relationships" at issue in this case is comparable to that in *Geraway* and, thus, require reversal. We disagree. *Geraway* is clearly distinguishable in that the relationships alleged therein obtained among members of a single law firm, the defendant, and witnesses in the same case.

Although we conclude that the defendant has failed to establish a genuine conflict of interest, we do recognize the rather complicated nature of the fact pattern with which we are faced. In our effort to do justice for this particular defendant, we have examined the record for evidence of material prejudice. However, we are able to discern none. The evidence against the defendant, if ever presented to a jury or judge, could easily result in his convictions on two counts of murder in the first degree. We think that, given the differences in punishments for the two crimes, the defendant was well advised to plead guilty to the lesser charges on the two murder indictments.

2. *Voluntariness of the defendant's pleas.* The defendant contends that his pleas of guilty to murder in the second degree were involuntary, because he was not specifically informed that murder in the second degree imports an unlawful killing with malice aforethought. The defendant relies on *Henderson* v. *Morgan*, 426 U.S. 637 (1976), in support of his contention.

*Henderson* involved a New York statute which made intent to kill a necessary element of the crime of murder in the second degree. The defendant in that case, who was well below average intelligence, admitted to stabbing the victim, but made no statement as to his intent toward the

victim, except to say that he meant her no harm. In deciding to reverse the defendant's conviction, the Supreme Court explained: "There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary." *Id.* at 646. *Henderson* was decided more than three years after Soffen's guilty pleas were offered to and accepted by the court. There thus exists the question whether it is to be applied retroactively. However, we need not now decide that question. In our view, the defendant's pleas were made in accordance with the Supreme Court's holding and were voluntary within the meaning of the due process clause.

During the defendant's hearing on the guilty pleas in question, the district attorney read into the record the evidence that he expected to produce at trial. When questioned by the judge as to whether the district attorney's version of events was correct, the defendant responded affirmatively. Under the law of this Commonwealth, intent to kill is not a necessary element of murder in the second degree. *Commonwealth* v. *Mangum*, 357 Mass. 76, 85 (1970). *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). All that need be proved is an unlawful killing with malice aforethought, *Commonwealth* v. *McCauley*, 355 Mass. 554, 559 (1969), and malice aforethought can be inferred from the use of a deadly weapon. As the defendant admitted that he shot Dube twice in the head and Perrot six times in the head and deposited their respective corpses in the Connecticut River and the trunk of a car, we conclude that the pleas were voluntary within the meaning of *Henderson*.

In *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343-344 (1978), this court held that *Henderson* is satisfied when a defendant offers statements admitting to facts which constitute the unexplained element. The Supreme Court stated as much in its own opinion. See *Henderson* v. *Morgan, supra*. Soffen seeks to distinguish his case from the principle articulated in *Henderson* and *McGuirk* by pointing out that he himself made no statement detailing the crimes involved. Rather, he admitted to facts as related by the district attorney. The defendant's efforts in this regard are undertaken in vain. Both *Henderson* and *McGuirk* refer to substantive admissions as being the relevant factor. Neither opinion details a particular procedure through which a defendant's admissions must come to light. An affirmative response to the facts as stated by another, if those facts include the necessary elements of the crime to which the defendant ultimately pleads guilty, is sufficient to satisfy the *Henderson* rationale.

In the instant case, the defendant admitted to the truth of facts which would support convictions of murder in the first degree. We cannot now hold that his admissions are insufficient to sustain his pleas of guilty to murder in the second degree.

> *Judgments affirmed.*
> *Order denying defendant's motion*
> *to withdraw guilty pleas or*
> *for a new trial affirmed.*