Commonwealth vs. Douglas Paul Huot.

Suffolk. January 9, 1980. — April 16, 1980.

Present: Hennessey, C.J., Braucher, Kaplan, Liacos, & Abrams, JJ.

*Practice, Criminal,* Plea. *Homicide.*

At a hearing on a motion for a new trial, there was sufficient evidence to warrant a finding that the defendant had known and understood the elements of second degree murder, as required by *Henderson* v. *Morgan,* 426 U.S. 637 (1976), at the time he pleaded guilty. [406-410]

Indictment found and returned in the Superior Court on February 10, 1967.

A motion for a new trial was heard by *Simons,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Ellen Y. Suni (Jack I. Zalkind* with her) for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

Liacos, J.   On February 10, 1967, Douglas Paul Huot (Huot) was indicted for murder in the first degree.   A trial began on July 11, 1967.   On July 19, 1967, Huot pleaded guilty to second degree murder and was sentenced to life imprisonment.   Huot petitioned a single justice of this court in March, 1970, for a writ of error on the ground that his guilty plea was coerced.   After a hearing on the merits, the single justice ruled on June 14, 1971, that Huot's plea was voluntary, was made after reasonable inquiry by the judge and was not constitutionally infirm.   He affirmed the conviction, but reserved and reported his findings, rulings, and order for judgment.   In *Huot* v. *Commonwealth,* 363 Mass. 91 (1973), the full bench concurred with the single justice.

On September 27, 1977, the defendant moved for a new trial. in the Superior Court in Suffolk County pursuant to G. L. c. 278, § 29. He alleged that his plea was invalid because, before he pleaded guilty, he was not informed of the essential elements of the crimes of first and second degree murder and manslaughter, nor was he informed that he had certain constitutional rights.[1] After hearing, a judge of the Superior Court denied the motion. Huot appealed. We transferred the appeal here on our own motion. We affirm.

At the hearing on the motion for a new trial, the judge heard the defendant's testimony and received in evidence four exhibits, including the defendant's first degree murder indictment of February 13, 1967, and the June 14, 1971, findings, rulings, and order for judgment of the single justice. The judge took note of *Huot* v. *Commonwealth, supra.* He made several findings relating to the 1967 trial, plea and sentencing proceedings. According to the judge, the defendant was represented throughout by able, experienced counsel. Huot was twenty-seven years old, a sophomore in college, with college entrance examination scores above 600 and an IQ of 151. He was "intelligent, mature, and under no impediment to a full understanding of his circumstances." The judge found that the indictment, which included the phrase "with intent to murder her," was served on Huot on February 13, 1967, and was read to him at the time of his plea. Before offering to enter a plea of guilty of murder in the second degree, Huot sat through "several days of trial in which the Commonwealth had produced expert testimony showing numerous violent injuries to the victim and other testimony showing sufficient evidence upon which the jury could return a verdict of guilty of murder in the first degree." The judge found that the defendant was made aware of the element of murder in the first degree supplied by proof of an act involving extreme atrocity and cruelty. Finally, the judge found that, at the time of the 1971 hearing before the single justice, the defendant under-

---

[1] The defendant does not press the latter point on appeal.

stood that malice aforethought "is an element [of murder] which must be proved by the government beyond a reasonable doubt." Based on these findings, the judge concluded that Huot "was aware of and understood all of the critical elements of the crime of murder, and that he intelligently and voluntarily pleaded guilty to so much of the indictment charging first degree murder as constituted murder in the second degree."

In *Huot* v. *Commonwealth*, 363 Mass. at 92-96, we summarized at length the proceedings before the single justice in 1971. Our discussion details the single justice's account of the trial, plea and sentencing proceedings. We do not repeat the summary here. However, we note that according to the evidence presented at trial, Huot went one evening with the victim, Betty Jeanne Orrill, and others to the Playboy Club, where Huot had several drinks. Huot and Orrill argued and left the club at 12:30 A.M. At 4:30 A.M., the police found Huot nude from the waist down in the victim's bedroom and trying to resuscitate her. She had apparently been beaten to death with hard punches and a shod foot. Medical testimony described her injuries in detail. There was also testimony describing the condition of the room at the time the police arrived and describing what Huot said at that time. *Id.* at 93.

When defendant pleaded guilty on July 19, 1967, his lawyer said: "He tells me that he has spotty recall of what took place there the balance of the evening at the Playboy Club. He doesn't remember driving home at all.

"And I suggest that he does remember enough of the facts — and he tells me — to know that he is the person responsible for this homicide. But I would respectfully suggest that because of the amount of liquor that was consumed by him that it should be considered as a mitigating factor." After the lawyer made this statement, the judge asked Huot if he understood the severity of the offense and the seriousness of the sentence involved. Huot answered each question, "Yes," and after answering other questions he eventually pleaded

guilty "to so much of this indictment . . . as charges you with Murder in the Second Degree."[2]

Huot argues that his motion for a new trial is the proper vehicle for challenging the constitutionality of his guilty plea. He argues that by virtue of the United States Supreme Court decision in *Henderson* v. *Morgan*, 426 U.S. 637 (1976), decided after his prior appeal, his guilty plea was invalid. Huot argues that *Henderson* is retroactive, and that he did not have adequate notice and understanding of the essential elements of the charges to which he pleaded, as required by that decision.

The Commonwealth argues that the defendant failed to raise his present contentions in the earlier proceedings attacking the voluntariness of his plea; this failure, according to the Commonwealth, constitutes a waiver, and the motion judge therefore did not abuse his discretion in denying the defendant's motion for a new trial.

A motion for new trial is the appropriate device for attacking the validity of a guilty plea. *Commonwealth* v. *Penrose*, 363 Mass. 677, 681 (1973). "[I]n the absence of waiver or other bar, there is no discretion to deny a new trial if a plea of guilty is entered in violation of a constitutional right of the defendant." *Id.* The motion judge did not purport to exercise his discretion in denying the defendant's motion; instead he reached the merits. Moreover, refusal to reach the merits would have been error, for the defendant's arguments concerning a possible interpretation of *Henderson* v. *Morgan, supra,* raised new matters that could not reasonably have been raised in the earlier proceedings.[3]

Huot's attack on the voluntariness of his plea rests on the decision in *Henderson* v. *Morgan, supra.* Because Huot pleaded guilty in 1967 and the Court decided *Henderson* in

---

[2] The transcript of proceedings on the entry of the plea is set forth in *Huot* v. *Commonwealth*, 363 Mass. 91, 95 n.3 (1973).

[3] This approach is consistent with Mass. R. Crim. P. 30 (b), 30 (c) (2), 378 Mass. 900 (effective July 1, 1979).

1976, the question arises whether *Henderson* is retroactive. We need not decide that question, however, for even assuming arguendo that *Henderson* is retroactive, we think that Huot's plea was valid.

In *Henderson* the defendant, a person of unusually low intelligence, was indicted for first degree murder. At his arraignment, after a reading of the indictment, he pleaded guilty to second degree murder. New York law made "a design to effect the death of the person killed" an element of second degree murder, N.Y. Penal Law § 1046 (McKinney 1967), but the trial judge found as a fact that this was never explained to the defendant. According to the United States Supreme Court, the failure to give the defendant notice of this "critical element" of second degree murder, 426 U.S. at 647 n.18, rendered his plea involuntary. Furthermore, the Court found "nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent." *Henderson* v. *Morgan*, 426 U.S. at 646. The defendant in *Henderson* did admit that he had stabbed the victim repeatedly, but, at the sentencing hearing, the defendant's lawyers asserted that he "meant no harm" when he entered the victim's room with a knife. According to the Supreme Court, "even if . . . a design to effect death would almost inevitably have been inferred from evidence that respondent repeatedly stabbed Mrs. Francisco, it is nevertheless also true that a jury would not have been required to draw that inference. The jury would have been entitled to accept defense counsel's appraisal of the incident as involving only manslaughter in the first degree." *Id.* at 645-646. In addition, the defendant's low intelligence lent a "modicum of credibility" to the manslaughter theory, *id.* at 647; thus, there could have been a reasonable doubt about the defendant's intent to kill.

Since *Henderson* was decided, we have had three opportunities to consider its meaning. *Osborne* v. *Commonwealth*, 378 Mass. 104 (1979). *Commonwealth* v. *Soffen*, 377 Mass. 433 (1979). *Commonwealth* v. *McGuirk*, 376 Mass. 338 (1978), cert. denied, 439 U.S. 1120 (1979). Three times we have sustained guilty pleas against constitutional attack based on *Henderson*. In each case, neither the judge at the plea hearing nor the defense counsel explained to the defendant the essential elements of second degree murder, but the defendant admitted facts constituting the essential elements, including the unexplained element of malice aforethought. In Massachusetts, malice, rather than a design to effect death, is the requisite mental element. Unlike the requirements of the New York law as to the crime of murder involved in *Henderson*, murder may be found in Massachusetts even where there is no actual intent to kill. *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). Malice aforethought includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow. *Commonwealth* v. *Mangum*, 357 Mass. 76, 85 (1970). Thus, in *Commonwealth* v. *McGuirk*, 376 Mass. 338 (1978), the defendant admitted to protracted beating of the victim.[4] In *Commonwealth* v. *Soffen*, 377 Mass. 433 (1979), the defendant admitted to shooting the victims in the head repeatedly. In *Osborne* v. *Commonwealth*, 378 Mass. 104 (1979), the defendant pleaded guilty not only to second degree mur-

---

[4] Huot cites *McGuirk* v. *Fair*, No. 78-3199 (D. Mass. Sept. 19, 1979) as a habeas corpus proceeding undermining the precedential value of *Commonwealth* v. *McGuirk*. Even assuming that such a decision could reduce the precedential value of our decision, see *Commonwealth* v. *Masskow*, 362 Mass. 662, 667-668 (1972), the defendant has not supplied us with a copy of the cited case, *McGuirk* v. *Fair*, and our own efforts to obtain one proved fruitless. Mere citation of an unpublished opinion does not bring it to our attention. We do note that, in subsequent proceedings, *McGuirk* v. *Fair*, No. 78-3199 (D. Mass. Oct. 30, 1979) appeal pending, No. 79-1653 (argued April 10, 1980), the United States District Court concluded that McGuirk's plea was voluntary and dismissed his petition for habeas corpus.

der, but also to two felonies within the felony-murder rule of G. L. c. 265, § 2. By each of these admissions, the defendant effectively admitted that he acted with malice aforethought. Thus, the difference between the underlying mens rea requirement in our cases and that in *Henderson* justifies the different results. Furthermore, in *Henderson*, the defendant's low intelligence supported a doubt about whether repeated stabbings necessarily implied a design to effect death. In contrast, in our cases, none of the defendants was of low intelligence. Also, in Massachusetts, the defendant's failure to foresee the consequences of his actions would not negate a finding of malice. *Commonwealth* v. *McGuirk, supra* at 346. Finally in *Henderson*, defense counsel said that the defendant meant no harm when he entered the victim's room with a knife. In none of the Massachusetts cases did the defendent or defense counsel make contemporaneous representations casting doubt on the defendant's admission of malice. Thus, in *McGuirk, supra* at 345, neither the defendant's asserted intoxication nor his vague fear that the victim might assault him was sufficient.

Douglas Paul Huot's case is no stronger than those we considered in *McGuirk, Soffen*, and *Osborne*. A man of unusually high intelligence, Huot sat through many days of trial during which the Commonwealth presented its case. He heard testimony of the medical examiner describing the victim's injuries and opining that they had been inflicted by fists and by a shod foot. At the time of Huot's plea, his lawyer said that Huot remembered enough facts to know that he was responsible for the murder. But even if he did not remember, he had heard the prosecution's case, and, in light of it, chose to plead guilty. See *Osborne* v. *Commonwealth, supra* at 107-108. See also *North Carolina* v. *Alford*, 400 U.S. 25 (1970). At the time of his plea, he understood that extreme atrocity and cruelty can be an element of first degree murder. Furthermore, he heard the reading of the indictment, which mentioned "intent to murder." Huot's testimony before the motion judge is the only evidence in

the record to show that Huot did not know the elements of second degree murder. The motion judge was not obliged to believe Huot. See *Commonwealth* v. *McGuirk, supra* at 346.

In light of the evidence tending to show that Huot appreciated the substance of the charge against him, the judge's finding that Huot knew and understood the elements of second degree murder at the time of his plea was not clearly erroneous. Moreover, Huot admitted through his attorney that he had inflicted serious injuries on Betty Jeanne Orrill. To the extent that he beat her with his fists, his case resembles *McGuirk*. To the extent that he used his shod foot, a dangerous weapon, see Annot., 33 A.L.R.3d 922, 927-929 (1970), and cases cited therein, his case resembles *Soffen*.

In any event, nothing in the record can stir us to doubt that the defendant understood the nature of the crime to which he pleaded guilty. "The defendant's plea meets the standard of the *Henderson* case because the defendant admitted facts constituting, at the very least, the crime to which he pleaded guilty." *Osborne* v. *Commonwealth, supra* at 108.

Neither the defendant nor defense counsel has ever advanced a view of the facts which would give credence to a manslaughter theory in this case. Furthermore, as in *McGuirk, supra* at 346, "[t]he defendant's intoxication also does not relieve his actions of their malicious quality in law." Thus, Huot admitted both that he killed Betty Jeanne Orrill and that he did so with malice aforethought.

*Judgment affirmed.*