COMMONWEALTH *vs.* STEVEN CHETWYNDE.

·No. 90-P-142.

Plymouth. January 7, 1991. - July 3, 1991.

Present: BROWN, DREBEN, & LAURENCE, JJ.

*Practice, Criminal*, Plea, Assistance of counsel. *Attorney at Law*, Conflict of interest. *Constitutional Law*, Assistance of counsel.

On a motion for a new trial in a criminal case, the defendant's allegation that defense counsel's misrepresentation to the defendant that the court had denied a motion to suppress his confession was an inducement to plead guilty rendering his pleas involuntary raised an issue of ineffective assistance of counsel; the case was remanded for further development of the record to determine the validity of the guilty pleas. [11-15]

On a motion for a new trial in a criminal case there was no merit to the defendant's contention that his counsel had a conflict of interest in representing the defendant. [15-16]

INDICTMENTS found and returned in the Superior Court Department on July 13, 1982.

A motion for leave to withdraw guilty pleas, and for a new trial, was heard by *Robert L. Steadman*, J.

*Kevin J. Reddington* for the defendant.

*Linda M. Fleming*, Assistant District Attorney, for the Commonwealth.

BROWN, J. On appeal the defendant, Steven Chetwynde, challenges the validity of his guilty pleas. In patching together the facts giving rise to the indictments in this case, we place particular emphasis on those that were corroborated in a confession given by the defendant while in the custody of the Marshfield police.

The defendant and a codefendant, David Williams, had been drinking extensively at several bars in the towns of Hanover, Marshfield, and Duxbury from 2:00 in the afternoon of June 29, 1982, until approximately 1:00 the next

morning. At some point, the defendant and Williams discussed a need for money and Williams stated that he knew a "good place to go." They then drove to the home of a Ruth Trow in Marshfield. After several unsuccessful attempts, Williams broke one of the windows and went inside the house. The defendant then proceeded to the rear of the house where he entered through the rear kitchen door. The defendant stood alone in the dining room for a minute or so, whereupon Williams emerged from another room carrying a television set. Williams then placed the television on the dining room table, and the defendant took it out the kitchen door and put it in the trunk of the car. The defendant then reentered the house, stood in the kitchen for a minute, and heard voices coming from another room.

Ruth Trow's statement indicates that she was asleep in her bedroom when she heard someone outside her bedroom door. She walked towards the door and yelled, "Get the hell out of here." After this a male subject kicked open her bedroom door, shined a flashlight in her eyes, placed a gun to her throat, and stated, "Lie down and close your eyes or I'll blow your head off." After repeated demands for money, Trow stated that her assailant then took her purse, looked through it, and said, "There's only seven dollars here, that's not going to feed my coke habit." The assailant pushed the gun firmly against her throat and stated, "Where are your diamonds, tell me where they are or I'll rape you." When Trow replied that she had none, the intruder then proceeded to rape her. She went on to say that after he completed the rape he got up and summoned a second male subject.

At this point, the defendant, who was waiting in the kitchen, heard Williams yell, "Hey, Marco, come here." The defendant entered the bedroom and saw Williams kneeling on the bed with his hands over Trow's face, telling her to be quiet. The defendant took several pillow cases and tied her hands and feet. After looking around the house for a few more moments the two men left.

The police interrupted the defendant's confession to inquire about the gun. The defendant hesitated and, according

to the police report, replied that "[Williams] usually ha[d] it all the time but he [the defendant] didn't remember seeing it during this incident."

The second incident occurred at the home of Beatrice Farmer, the defendant's former landlord.[1] Farmer's statement indicates that she was asleep in her upstairs bedroom and was awakened by two men standing on either side of her. The man on the right side clamped his hands over her mouth and said, "I have a gun and if you do not tell me in twenty seconds where your money is or where your jewelry is, I will kill you." She also stated that she "could see the figure of a gun." At that point, her assailant noticed a ring on her finger and demanded that she take it off. The men proceeded to burglarize her home, taking cash and jewelry. They then tightly tied her hands and ankles and placed a gag over her mouth. Before leaving the scene, one of the men placed his thumb deep into her throat with enough force to cause her to black out.

The defendant's confession further indicates that in attempting to leave the scene Williams and the defendant's car became stuck in the mud outside Farmer's house. By this time, the police had been alerted, and when the two men saw the cruisers they fled the scene on foot. A police search of the vehicle disclosed a pellet gun and Farmer's jewelry box and pocketbook with money inside. The vehicle turned out to be the property of Williams. Marshfield police arrested the defendant in the early morning hours on June 30, 1982.

The defendant was indicted on two counts of armed assault in a dwelling; two counts of burglary and armed assault; two counts of assault by means of a dangerous weapon; and two counts of armed robbery. In addition to these offenses, Williams was also indicted for rape. Counsel for the defendant filed several pretrial motions, including a motion to suppress the statement given to the Marshfield police. The defendant subsequently changed his pleas to guilty. After a hearing, the judge accepted the guilty pleas and imposed

[1]Convinced that they could get "some easy money," the two men drove to Pembroke where they forcibly entered Ms. Farmer's home.

concurrent sentences of twenty to twenty-five years on the armed assault, armed robbery, and burglary convictions. The remaining indictments were placed on file.

On January 13, 1988, the defendant, represented by different counsel, filed a motion for a new trial or, in the alternative, withdrawal of his guilty pleas. As grounds therefor, the defendant alleged that his plea was not knowing and voluntary, and was tainted by the ineffective assistance of his counsel. After several hearings, the motion was denied. This appeal ensued.

The defendant claims that his guilty pleas were induced by his counsel's (1) misrepresentation of the status of a motion to suppress; (2) erroneous advice regarding the elements of joint venture; (3) misrepresentation regarding sentencing; and (4) erroneous advice concerning the effect of intoxication on the charges against him. He also alleges that his counsel had a conflict of interest.

While most of the defendant's claims on appeal are without merit, the central question which this court is called upon to consider is whether the conduct of defense counsel in, allegedly, misrepresenting to the defendant that his motion to suppress a taped confession had been denied by the court fell so far below an objective standard of reasonableness as to constitute ineffective assistance of counsel, and if so, whether such conduct affected the plea process to such an extent as to require setting aside the defendant's guilty pleas.

The defendant alleges that when he asked defense counsel about the status of the motion to suppress his confession, counsel told him that a hearing had been held and the motion had been denied by the court. The record, however, indicates that no such hearing was ever held and that the motion was never acted upon by the court.[2] The essence of the defendant's ineffectiveness contention is that counsel fabricated the status of the motion in order to induce him to plead

---

[2] Defense counsel testified at the hearing on the motion for a new trial that he had discussed with counsel for the co-defendant a motion to suppress, but he could not remember whether they had filed such a motion.

guilty to the charges against him and that this misrepresentation rendered the plea involuntary.

Where a defendant enters a guilty plea upon counsel's advice, the voluntariness of the plea depends upon whether the advice "was within the range of competence demanded of attorneys in criminal cases." *Hill* v. *Lockhart*, 474 U.S. 52, 56, 59 (1985). In determining whether that level of competence has been met, this court is guided by the familiar standard of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See also *Commonwealth* v. *Triplett*, 398 Mass. 561, 568 (1986); *Commonwealth* v. *Montanez*, 410 Mass. 290, 295 (1991).

A judge's subsidiary findings of fact will be accepted on review absent clear error. *Commonwealth* v. *White*, 374 Mass. 132, 137 (1977), aff'd, 439 U.S. 280 (1978). This court must, however, make its own independent determination of the correctness of the judge's application of constitutional principles to the facts found. *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977). Here, the Superior Court judge specifically found that counsel "had advised [the] defendant competently . . ." and that "there was no evidence that the plea was entered through ignorance or inadvertence." The record, however, does not provide adequate support for that finding.

The defendant testified at the hearing that counsel had represented that the court, after a hearing on the matter, had denied the motion to suppress. The docket entries corroborate the defendant's claim that counsel waived the motion to suppress. The defendant asserts that the waiver was made without his knowledge. The judge made no finding in this regard.

Moreover, the defendant's motion for a new trial specifically states that "[counsel] did not . . . protect and preserve the record through hearing on [a] motion[] to suppress and, in fact, represented to the defendant . . . that the motion to suppress had been presented and had been denied." The Commonwealth offered no evidence to refute the defendant's contention. Indeed, the record of the hearing contains no explicit denial of the defendant's allegations about his counsel's

conduct.[3] The judge, therefore, erred in finding that "there was no evidence that the plea was entered through ignorance." If the defendant's assertions are true,[4] it cannot reasonably be said that counsel's conduct regarding the status of the motion to suppress was "competent." Cf. *Commonwealth v. Moreau*, 30 Mass. App. Ct. 677, 682 (1991). The conduct of which the defendant accuses his attorney "fall[s] measurably below that which might be expected from an ordinary fallible lawyer."[5] *Commonwealth v. Saferian*, 366 Mass. at 96. See also *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) (counsel misrepresented the status of conversations with the prosecution and with an incriminating witness).

Although the defendant's allegations satisfy the first prong of the *Saferian* test, the inquiry does not end there. The defendant still must make "some showing that better work might have accomplished something material for the defense." *Commonwealth v. Satterfield*, 373 Mass. 109, 115 (1977). In the circumstances presented here — a motion to withdraw guilty pleas — we do not think the resolution of the question of ineffectiveness depends upon whether there was a reasonable likelihood of success on the merits of the motion to suppress,[6] or whether counsel's conduct in allowing

---

[3]The only record evidence undercutting the defendant's allegations is found in the transcript of the sentencing hearing where defense counsel mentions that he had evaluated the possibility of success on a motion to suppress.

[4]If an attorney knowingly makes a false material and consequential representation to a client, it would constitute ineffective assistance. Of course, the defendant's allegations may not be true.

[5]Counsel's conduct, if it occurred, violated several of the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law. See, e.g., S.J.C. Rule 3:07, DR 1-102(A)(4), DR 7-101(A)(1), DR 7-101(A)(3), and DR 7-102(A)(5), as appearing in 382 Mass. 770, 784, 785 (1981).

[6]The defendant, relying upon *Commonwealth v. Hosey*, 368 Mass. 571 (1975), suggests that given his extreme intoxication on the evening in question, there was a reasonable likelihood of success on the merits of the motion to suppress. This contention is speculative. Here, there is nothing in the record regarding the defendant's demeanor or state of mind during the interrogation which would indicate that the defendant was so intoxicated as to be unable intelligently to waive his right to remain silent.

the motion to lapse reasonably could be characterized as a "tactical maneuver" and therefore given deference by this court. See *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 (1985). Rather, the crucial issue here is whether the defendant was so misled by counsel's alleged false representations that he prematurely waived his right to a jury trial.

The confession was the centerpiece of the Commonwealth's case against the defendant. As such, the status of the motion to suppress that confession was of paramount concern to the defendant in deciding whether to plead guilty. This is especially true if we accept, for the sake of discussion, that since defense counsel had advised the defendant that he should not "rock the boat," that he "didn't have a chance" in front of a jury, and that his statement to the police "would convict him in front of just about any jury around." In these circumstances, there can be little doubt that if counsel falsely represented that the motion to suppress had been denied, the defendant reasonably might have thought that any hope he may have had of mounting a successful defense at trial had been foreclosed. Cf. *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33, 36-37 (1986).

It is true that the defendant's affidavit in support of his motion to withdraw the guilty pleas does not specifically allege that he would not have pleaded guilty if counsel had not misrepresented the status of the motion to suppress. This should not, however, be a bar to prevailing on a claim of ineffective assistance of counsel, particularly where the requisite showing of prejudice is apparent from the record.[7] Cf. *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978) ("manifestly unreasonable"); *Commonwealth* v. *Childs*, 23 Mass. App. Ct. at 35-36 ("likely effect" amounts to ineffective assistance). The essence of the defendant's testimony at the motion hearing was that counsel advised him to plead guilty, even though the defendant insisted he wanted a jury

---

[7] On this record, potential prejudice would arise only from the alleged misrepresentation. See note 6, *supra*.

trial.[8] Thus, the record, and the reasonable inferences that may be drawn therefrom, suggest that the defendant may well not have intelligently waived his right to a jury trial. *Hill* v. *Lockhart*, 474 U.S. at 56. *United States* v. *Giardino*, 797 F.2d at 31.

The defendant's remaining claims are all without merit. We are, however, obliged to comment briefly due to the important concerns implicated by one allegation. The defendant contends that his counsel's professional judgment may have been impaired in this case because of his joint representation of the owner of the pub where the defendant had been drinking on the evening the crimes were committed.

Apparently, counsel wrote the defendant in November, 1983, informing him that the owner of the pub had become upset because of the negative publicity his establishment had received as a result of the defendant's case. Relying principally on the November, 1983, letter, the defendant now suggests that counsel, motivated by the desire to shield the owner from such negative publicity, erroneously advised him that intoxication was not a defense to the crimes charged.[9] See *Commonwealth* v. *Henson*, 394 Mass. 584 (1985).

A conflict of interest arises whenever an attorney's regard for one duty leads to disregard of another. *Commonwealth* v. *Goldman*, 395 Mass. 495, 503-509 (1985). The record in this case shows that counsel did, in fact, represent both the defendant and the owner of the pub. It does not, however, indicate that counsel represented both clients at the same time. Nor does it show that counsel was aware of the adverse publicity the owner received before the defendant entered his guilty plea. Indeed, the defendant pled guilty in February of

---

[8]Counsel did not deny that he gave such advice; he merely stated that he did not recall this conversation.

[9]Prior to *Commonwealth* v. *Henson*, 394 Mass. 584 (1985), it was settled law that a defendant could not rely upon voluntary intoxication as an excuse or justification for general or specific intent crimes. See *id.* at 592-594. The indictments in this case pre-date the decision in *Henson*, and since the defendant does not suggest that in these circumstances *Henson* should be applied retroactively, it follows that counsel's advice that intoxication was not a "defense" to the crimes charged was therefore not erroneous.

1983 and the letter referring to counsel's representation of the owner was dated some nine months later and written in the present tense.

Accordingly, this matter is remanded to the Superior Court for an evidentiary hearing to develop and determine the circumstances attendant to the filing of the motion to suppress and reason (or reasons) for the absence of any resolution of that motion on the record. If it is determined that the defendant's counsel did, in fact, misrepresent the status of the motion to suppress, the defendant shall be provided an opportunity to withdraw his guilty pleas; otherwise, the order denying the defendant's motion for a new trial or withdrawal of his guilty pleas is affirmed.

*So ordered.*