## Commonwealth *vs.* Luis Berrios.

No. 03-P-1612.

Hampden. December 9, 2004. - September 16, 2005.

Present: Kantrowitz, Doerfer, & Kafker, JJ.

Further appellate review granted, 446 Mass. 1101 (2006).

*Practice, Criminal,* Plea, Assistance of counsel. *Evidence,* Guilty plea.

This court concluded that a criminal defendant's guilty plea was not intel-
ligently or knowingly made due to the ineffective assistance of counsel, as
reflected in counsel's failure to keep track of the progress of the case of a
codefendant in which one of the witnesses, who was the only alleged
percipient witness against the defendant, had testified in a way that did not
incriminate the defendant [547-551]; and as reflected in counsel's decision
not to prosecute a viable motion to suppress the defendant's allegedly
coerced confession sufficiently in advance of the date set for trial
[551-553]; in light of this conclusion, this court saw no reason to remand a
Superior Court judge's findings and rulings that the defendant's plea was
coerced (which findings were centered on stress created by the plea bargain
and the conduct of counsel and the defendant's mother and girlfriend)
[553-557], and could discern no prejudice to the Commonwealth arising
from the granting of a new trial [557].

Indictments found and returned in the Superior Court Depart-
ment on May 16, 1995.

A motion to withdraw pleas of guilty was heard by *Judd J.
Carhart*, J.

*Dianne M. Dillon*, Assistant District Attorney, for the
Commonwealth.

*Joseph F. Krowski* (*Jason C. Howard* with him) for the
defendant.

Doerfer, J. This is the Commonwealth's appeal from the al-
lowance of the defendant's August, 2001, motion for a new
trial. The defendant was charged with being an accessory before
the fact to murder,[1] and other related crimes arising out of a

---

[1]He was indicted in May, 1995, for accessory before the fact to murder;

gang-related shooting on February 28, 1995, in Springfield.[2] On January 17, 1996, the date his trial was scheduled to begin, a plea bargain was reached, and the defendant pleaded guilty to being an accessory before the fact to murder in the second degree, thereby permitting him to be sentenced to life imprisonment with the possibility of parole in fifteen years.[3]

Within a few months, the defendant began his collateral attack on the murder conviction. On April 11, 1996, he filed a pro se motion seeking certain documents to help him prepare postconviction actions.[4] On April 16, 1997, the defendant filed a pro se motion for new trial seeking to withdraw his guilty plea.[5] The defendant was assigned counsel who, on August 13, 2001,

conspiracy to commit murder; three counts of accessory before the fact to armed assault with intent to murder; and three counts of accessory before the fact to assault and battery by means of a dangerous weapon.

[2]At about the same time the defendant was indicted for an unrelated set of offenses that occurred on June 1, 1994, and included possession of ammunition without a firearms identification card; possession of an altered firearm; and carrying a firearm.

[3]On all of the other indictments, except for the indictment that charged possession of a firearm, the defendant was sentenced to a term of three to five years in State prison concurrent with the life sentence. The indictment charging possession of a firearm was filed. An indictment charging conspiracy was nol prossed.

[4]The documents he sought were the prosecutor's notes of his interview with Luis Concepcion (also known as Lou Boogie), a key Commonwealth witness who had met with the prosecutor and agreed to testify against the defendant only a few days before the trial was scheduled to begin. The defendant's appeal from the denial of his motion was dismissed by this court for failure to prosecute in October, 1996. In October, 1997, the defendant, now represented by counsel, sought once more to compel discovery of the prosecutor's notes. The motion was allowed, and the Commonwealth appealed to a single justice of the Supreme Judicial Court who, in May, 1998, remanded the matter to the motion judge for further findings. The judge denied the motion after a hearing in September, 1998, and the defendant appealed to this court, which dismissed the appeal as interlocutory in May, 2000.

[5]A copy of this motion appears in the defendant's supplemental record appendix, along with numerous other documents. The Commonwealth has moved to strike all but eleven pages of the 130-page supplemental appendix, on the grounds that the documents are outside the scope of Mass.R.A.P. 8(a), as amended, 378 Mass. 932 (1979), having never been offered or admitted in evidence at the hearing on the motion for a new trial, and are irrelevant or inadequately identified under Mass.R.A.P. 18(a), as amended, 425 Mass. 1602 (1997), and Mass.R.A.P. 18(d), as amended, 370 Mass. 919 (1976). The Commonwealth's motion to strike is denied. The materials in the defendant's supplemental appendix, which are sufficiently identified, were either attach-

filed a motion pursuant to Mass.R.Crim.P. 30 to withdraw guilty pleas and for a new trial (motion for a new trial) on behalf of the defendant. A hearing on his motion for a new trial was held before the judge who had accepted the guilty plea. Evidence was taken over four days in July and August, 2002. The judge made written findings of fact and, noting that he found the defendant to be a credible witness, concluded that under the special circumstances of this case, justice may not have been done, and allowed the defendant to withdraw his plea and stand for trial of being an accessory before the fact to murder. The judge agreed with the defendant's claim that the plea was not voluntary but disagreed with the claim that the defendant had received ineffective assistance of counsel. Both parties have appealed. We uphold the granting of the motion for a new trial but analyze the issues differently than did the motion judge.

1. *Facts.* a. *Underlying incident.*[6] The defendant and others were congregating at the apartment of Sharleen Alvarez on February 28, 1995.[7] All of them were either members of a gang know as Los Solidos or members of a related organization. Among those present were Robert Francis (also known as Skills), the defendant, Victor Figueroa, Johnny Sanchez, Daniel Rodriguez, Michael Borden (also known as Michael Brown or Mack), Jason Jiles, and Alvarez. See *Commonwealth* v. *Francis*,

---

ments to the defendant's August, 2001, motion for a new trial; authenticated by witnesses at the hearing on the motion; or matters of public record. "Everything which was presented to the . . . judge is in the record before us." *Pilch* v. *Ware*, 8 Mass. App. Ct. 779, 780 (1979). We take judicial notice of the excerpts of trial testimony from the codefendants' cases. See *First Justice of the Bristol Div. of the Juvenile Ct. Dept.* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Ct. Dept.*, 438 Mass. 389, 391 (2003); *Commonwealth* v. *Morse*, 50 Mass. App. Ct. 582, 584 n.3 (2000).

[6]We refer to the facts found by the judge at the hearing on the motion for a new trial or not disputed by the parties. See *Commonwealth* v. *Moreau*, 30 Mass. App. Ct. 677, 679 (1991), cert. denied, 502 U.S. 1049 (1992). The evidence relating to those facts will be discussed as appropriate. Testifying at the hearing were the defendant, his mother and girlfriend, his defense counsel at the time of the plea, and counsel for one of the prosecution's proposed trial witnesses.

[7]The facts concerning the underlying incident are more fully set forth in *Commonwealth* v. *Francis*, 432 Mass. 353, 354-356 (2000), involving the appeal of one of the participants. The Commonwealth in the instant appeal has adopted the facts as recited therein "as the factual background."

432 Mass. 353, 355 (2000). At some point two more people, Luis Concepcion and David Jiles, burst in and excitedly reported that a car full of members of a rival gang, the Latin Kings, was in the parking lot of the Kentucky Fried Chicken restaurant which could be seen from the apartment window. According to Concepcion and David,[8] the Latin Kings members were making hand signals showing disrespect to Los Solidos, a situation viewed as intolerable by certain members of Los Solidos. Two persons, Jason and Borden, were dispatched to deal with the situation. One of them shot Carlos Falcon in the head at point blank range as he was about to enter the car, killing him. Three of Falcon's companions were wounded in the same incident by the other Los Solidos member, who fired into the car.[9] The key issue in the defendant's case was what role, if any, the defendant (who was not a shooter) played in the incident.

b. *Events leading up to the defendant's guilty plea.* As a result of a police interrogation, a written confession was obtained from the defendant in May, 1995, in which he admitted to ordering the February 28, 1995, "mission" to murder the offending members of the Latin Kings. The defendant at all times thereafter maintained that his confession was made only as a result of severe beatings he received from one Lieutenant Kelly while in custody at the Springfield police station over the weekend of May 12 to May 14, 1995.[10] According to the defendant, he had been denied access to a lawyer and to his family; he had been denied food, clothing, and sleep; and he was repeatedly threatened and questioned by police and struck by Lieutenant Kelly until, two days later, he finally agreed to sign a statement that the officers had typed. The Commonwealth by no means conceded this point but did not present evidence from Lieutenant Kelly or any other witness at the hearing

[8]Individuals will be referred to by their surnames, except in the case of David and Jason Jiles, who share a surname.

[9]Jason was convicted of murder in the first degree, and Borden pleaded guilty to murder in the second degree in connection with the shootings. Francis was convicted as an accessory before the fact to murder in the first degree. Jason and Francis appealed and their convictions were affirmed.

[10]The judge found that the defendant knew Lieutenant Kelly from a 1994 arrest, after which the defendant filed a complaint against Kelly, alleging Kelly had beaten him.

on the motion for a new trial to contradict the defendant's allegations.[11]

At the grand jury proceeding that gave rise to the indictments against the defendant, the Commonwealth elicited testimony from Rodriguez, who identified the defendant as one of the leaders of Los Solidos who had met in a bathroom at Alvarez's apartment where the decision to order a mission against the Latin Kings was made. Rodriguez testified at the grand jury that the defendant was one of the people, along with Francis, making the decision and giving the orders.

The defendant's attorney filed a motion to suppress the defendant's confession in September, 1995, but it was not accompanied by any affidavit from the defendant. He subsequently advised the defendant that he would have almost no chance of prevailing on the motion to suppress because the judge would inevitably not believe him about his treatment at the police station and would instead believe the expected denials of the police officers. He advised him that he would have a better chance with the jury, which would be more likely to reject the defendant's confession as involuntary under the "humane practice" rule (see *Commonwealth* v. *Tavares*, 385 Mass. 140, 149-150, cert. denied, 457 U.S. 1137 [1982], and cases cited), than would the judge. Defense counsel also testified that he thought that the defendant was articulate and a good witness, and that his trial strategy would have been to rely on the defendant's denials that he played any role in the planning or ordering of the mission.

As the matter neared trial, defense counsel learned that the district attorney would agree to a plea by the defendant to accessory before the fact to murder in the second degree. A condition of that offer was that the defendant's motion to suppress his confession would not be argued. Shortly before the date set for trial, defense counsel also learned from the assistant district attorney prosecuting the case that a new witness, Concepcion (who was a codefendant awaiting trial and thus not previously expected to testify), was prepared to testify against the defend-

---

[11]The Commonwealth did submit evidence of a defendant in an unrelated case who pleaded guilty to perjury after testifying he had been beaten into signing a confession while in custody at the Springfield police department.

ant, and would paint a picture of the defendant taking an active role in sending the two Los Solidos shooters into action. Concepcion had already given a statement to the police implicating the defendant in ordering the shootings.

At this point defense counsel actively urged the defendant to accept the deal offered by the prosecutor. According to the defendant, defense counsel told him that he had no chance of prevailing at trial and that he had no choice but to accept the deal. The defendant's mother and his girlfriend, at the active urging of defense counsel, also pleaded with the defendant to take the deal. They told him his only hope of ever getting out of prison and seeing his child again was to plead guilty.

2. *Motion for a new trial.* The judge who heard the motion for a new trial was the same judge who heard the original plea. The transcript of that plea hearing was part of the evidence at the hearing on the motion for new trial. There was no claim that the original plea colloquy was constitutionally defective or otherwise so deficient that justice may not have been done. Compare *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 492 (1985). Nevertheless it is clear that a judge has the authority to permit a plea to be withdrawn if he concludes, on the basis of argument or evidence given after the fact, that the plea was not made voluntarily or intelligently. See *id.* at 494; Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001) (judge "may grant a new trial at any time if it appears justice may not have been done"). See also *Commonwealth* v. *Foster*, 368 Mass. 100, 108 nn.6, 7 (1975). The judge also has "residual discretion" to grant relief where there is a claimed defect in the plea colloquy, especially where the motion judge was the plea judge. *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. at 501.

The defendant testified that he did not want to plead guilty because he was innocent. He denied playing any role in the decision to order the mission and further claimed that he had been denied permission to participate in any discussions about the mission and had been excluded from the bathroom where those discussions supposedly took place. The defendant was prepared to testify at trial that although he had once been the president of Los Solidos, he had been removed from office as a

disciplinary measure two months before the incident. He was also prepared to testify that, as president, he had no authority to order physical attacks. There were other officers of Los Solidos with such authority: the "warlord" and the "chief enforcer." He was neither. The judge found that the defendant appeared to be a credible witness in his own defense. As a result of the evidence taken at the hearing on the motion for a new trial, the judge viewed the defendant as having a "viable defense to all charges."

Defense counsel's advice to the defendant to plead guilty was based on the following assumptions: (1) the defendant's confession would be admitted in evidence; (2) Rodriguez would testify that the defendant was a prime mover in the decision to attack the victims; (3) Concepcion would corroborate Rodriguez; (4) the jury would be biased against the defendant, a member of Los Solidos, a violent gang; (5) the defendant's testimony that he had no role in ordering the mission would not be believed; and (6) a plea of guilty would insure parole eligibility as opposed to life incarceration without the possibility of parole. In this scenario, the testimony of Rodriguez and Concepcion and the defendant's confession were the keystones in the case against him. The judge concluded that defense counsel's advice to the defendant to accept the plea bargain based on these factors was not ineffective.

The main claim of the defendant, however, is not that the advice to plead guilty based upon those assumptions was faulty, but rather that the assumptions themselves were flawed because of the failures of defense counsel in three major respects.

3. *Ineffective assistance.* a. *Counsel's failure to learn that Rodriguez had changed his testimony since the grand jury proceeding.* In December, 1995, prior to the defendant's change of plea, Rodriguez, the government's key cooperating witness, testified at the trial of Jason without naming the defendant as one of the Los Solidos members present in the bathroom and giving the order for the mission. In other words, he testified in a way that did not incriminate the defendant, and that deviated from his testimony before the grand jury in the defendant's

case.[12] Defense counsel was unaware of this. He had not sought to interview Rodriguez, nor had he monitored the trial of Jason or obtained a transcript of the testimony.[13] Thus his advice to defendant was based on a major failure to investigate the case against his client.

Where a defendant enters a plea of guilty on the advice of

---

[12]Subsequent to the defendant's plea, in February, 1996, Rodriguez testified at the trial of Robert Francis. The judge found that "Rodriguez'[s] testimony can be fairly interpreted as indicating that only Francis, [Jason] Jiles, and Brown were present in the bathroom while the murder was being planned." This version of events is reflected in the statement of facts appearing in the Supreme Judicial Court's decision in the case. See *Commonwealth* v. *Francis*, 432 Mass. at 354-365.

[13]Defense counsel testified at the motion hearing as follows:

Q.    "And you weren't aware that [Rodriguez] testified in December in the Jason [J]iles trial?"

A.    "I wasn't — I'll say this I wasn't aware of the Jason [J]iles trial, when it happened or so forth."

. . .

Q.    "Do you recall a trial — a case going to trial in December of 1995 involving Jason [J]iles?"

A.    "I don't."

. . .

Q.    "And you didn't sit in and observe any of the Jason [J]iles trial going on?"

A.    "I don't believe I did, no."

Q.    "In January of 1996, did you know the outcome of the Jason [J]iles trial?"

A.    "I'm uncertain, no, the answer is no."

Q.    "Did you know the list of witnesses who were called in the Jason [J]iles case?"

A.    "No."

Q.    "Did the name Daniel Rodriguez mean anything to you?"

A.    "As you — it does now as I sit here today it does, did it back

counsel, the voluntariness of the plea requires that the advice of counsel be "within the range of competence demanded of attorneys in criminal cases." *Commonwealth* v. *Chetwynde*, 31 Mass. App. Ct. 8, 12 (1991), quoting from *Hill* v. *Lockhart*, 474 U.S. 52, 56 (1985).[14] Cf. *Commonwealth* v. *Pike*, 53 Mass. App. Ct. 757, 761 (2002). Where the issue is whether the plea was knowing and intelligent (which is one of the constitutional requirements for a valid plea), the same principles of ineffective assistance apply. See *Commonwealth* v. *Decologero*, 49 Mass. App. Ct. 93, 97 (2000). See also *Commonwealth* v. *Chetwynde*, 31 Mass. App. Ct. at 13. To satisfy the second prong of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), the defendant must also show "actual prejudice." *Commonwealth* v. *Urena*, 417 Mass. 692, 699 (1994).

In *Commonwealth* v. *Chetwynde*, *supra* at 11-12, counsel misrepresented to his client that a motion to suppress had been heard and denied. We held that this conduct fell so far below the standard of an ordinary fallible lawyer that the defendant had no need to show that the motion to suppress would have been allowed. *Id.* at 13-14. Instead, the relevant issue was whether the defendant was so misled by his counsel's advice that he prematurely waived his right to a jury trial. The plea of guilty was not made "intelligently" and thus did not satisfy constitutional requirements. *Id.* at 15.

The lack of adequate investigation was the basis of a finding of ineffective assistance of counsel in *Commonwealth* v. *Alvarez*,

---

then I don't know."

Q.   "Well, it's fair to say then that you did not know that he had testified in the Jason [J]iles case?"

A.   "Until I read it, I believe it was a published opinion, I don't — I think the Commonwealth versus [J]iles was a published opinion with Danny Rodriguez's name, but I don't believe I knew he testified until I read either one of the advance sheets or I'm not sure if it's an SJC case or an Appeals Court case, but I think it went up on appeal."

[14]This is an alternative statement of the first prong of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), that the defendant must show that "there has been serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer."

433 Mass. 93 (2000). There the court held that counsel's failure to obtain hospital records permitted the Commonwealth to impeach a defense expert unfairly by suggesting that the defendant had not suffered certain brain injuries that were material to the expert's opinion of lack of criminal responsibility. Reviewing the settled principles, the court noted that the decision of defense counsel not to investigate must be "directly assessed for reasonableness in all the circumstances." *Id.* at 102, quoting from *Strickland* v. *Washington*, 466 U.S. 668, 691 (1984). Counsel's failure here to keep abreast of the trial of a codefendant in which testimony of a key prosecution witness related to the role of the defendant (among others) in ordering the shooting was manifestly unreasonable. Cf. *Commonwealth* v. *Moreau*, 30 Mass. App. Ct. 677, 682-683 (1991), cert. denied, 502 U.S. 1049 (1992) (assessment of reasonableness of counsel's advice to plead guilty based on counseled confession cannot be made without knowledge about strength of Commonwealth's case).

The issue of an intelligent waiver by the defendant is inextricably tied to his awareness of the changed testimony of Rodriguez. There is no allegation of misrepresentation by counsel. But there is a serious question of effective assistance raised by the failure of counsel to keep track of the progress of the case of a codefendant in which Rodriguez was a witness. In view of the discrepancy between his testimony before the grand jury and at Jason's trial, Rodriguez was unlikely to testify against the defendant in the same way he had done before the grand jury, i.e., by naming the defendant as one of those present in the bathroom when the shootings were ordered.[15] Had he reverted to the version of events he recounted at the grand jury, the impact of such testimony would have been greatly reduced as he would have been impeached by his failure to mention the defendant in his testimony at Jason's trial. As noted, the defendant's assessment of his chances of conviction would have been materially influenced by a knowledge of Rodriguez's testimony at Jason's trial.

---

[15]At Jason's trial Rodriguez was asked on two occasions to name those present in the bathroom for the crucial meeting. Both times he named six individuals, not including the defendant.

At the time of Jason's trial, Concepcion had not yet surfaced as a witness against the defendant, and Rodriguez was the only alleged percipient witness against the defendant. It was incumbent on counsel to know what Rodriguez had testified to in proceedings that preceded the trial of his client. We think the judge erred in holding that counsel's failure to be aware of Rodriguez's testimony met the standard of the ordinarily fallible lawyer.

Here, as in *Chetwynde*, the consequence of counsel's failure to investigate was that the defendant's decision to plead guilty was not made intelligently in that he had a false view of the strength of the evidence against him. In the guilty plea context, the requirement in *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977), that the defendant make "some showing that better work might have accomplished something material" is addressed to the question whether that plea was knowing, intelligent, and voluntary. A plea based on advice that is uninformed by adequate investigation of the facts is not knowing or intelligent, if adequate investigation would have revealed facts that would have affected the defendant's decision to plead. See *Commonwealth* v. *Moreau*, *supra* at 682 (in guilty plea context, "whether the behavior of counsel has 'likely deprived the defendant of an otherwise substantial ground of defence' means whether the defendant would not have confessed or pleaded guilty but for the advice"). There is no doubt that the defendant's decision to plead in this case was substantially influenced by his view that Rodriguez would be a witness identifying him as one of the initiators or motivators of the shootings.[16]

b. *Failure to press the motion to suppress.* Defense counsel's

[16]Further conduct by defense counsel may have exacerbated his error in regard to Rodriguez. Upon learning from the prosecutor that Concepcion would be testifying against the defendant, defense counsel advised the defendant that the testimony was "devastating to their defense and that he should strongly consider the Commonwealth's offer to allow him to plead guilty to second degree murder." Defense counsel's apparent failure to take into account and apprise the defendant of the strong impeachment value of Concepcion's letters to David and Jason Jiles may have further clouded the defendant's understanding of the strength of the Commonwealth's case against him. See *Commonwealth* v. *Moreau*, 30 Mass. App. Ct. at 682. These letters were in counsel's possession. In the letters, Concepcion labels the defendant "a snitch," on whom he "went all out" in his statement to the police. Ad-

decision not to prosecute the motion to suppress sufficiently in advance of the date set for trial is a further factor contributing to the conclusion that the defendant received ineffective assistance of counsel in deciding whether to plead guilty. The defendant's confession was a centerpiece, as in *Chetwynde,* of the Commonwealth's case against him. This was a viable motion to suppress. The judge found that the defendant was a credible witness. The defendant's testimony of having been beaten by a police officer would have been corroborated to some degree by the testimony of his mother and girlfriend as to his physical appearance shortly after the confession was signed. A failure of counsel to litigate a viable motion to suppress falls below the standards of the ordinarily fallible lawyer. See *Commonwealth v. Comita,* 441 Mass. 86, 90 (2004), and cases cited.

It is not necessary to decide whether the defendant demonstrated a likelihood that his motion to suppress would have been successful, as was the case in *Commonwealth v. Cutts,* 444 Mass. 821, 830-831 (2005), and in *Commonwealth v. Comita, supra.* Here, the question is not whether the defendant was deprived of an otherwise available defense in the context of a trial, but rather whether the defendant's ability to make an intelligent and knowing decision to plead was affected by not having the benefit of a decision on a viable motion to suppress. Because of defense counsel's failure to press the motion, the defendant was unable to assess intelligently the strength of the case against him, as he would have been if the motion had been decided.[17]

Forgoing the motion cannot be reasonably viewed as a tacti-

ditionally, the defendant made counsel aware of the long history of hostility between the defendant and Concepcion. Defense counsel's lapse in connection with Concepcion cannot reasonably be characterized as a "tactical maneuver" of the sort that would be accorded deference by this court. See *Commonwealth* v. *Chetwynde,* 31 Mass. App. Ct. at 14. Compare *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 (1985) (counsel was not ineffective for failure to present jury evidence that defendant's back injury made it impossible for him to have drowned the victim where counsel "didn't believe it would be believable to the jury"); *Commonwealth* v. *Mazzone,* 55 Mass. App. Ct. 345, 353 (2002) (in a case of "word against word, . . . [w]hile each error in isolation might not have required reversal," cumulative errors fatally infected the conviction).

[17]We note in passing that the judge mentioned the Commonwealth's "credibility problems with some or all of the witnesses who purported to place the

cal decision. The motion first became a bargaining chip in plea negotiations on the day set for trial only due to counsel's failure to present it in a timely fashion before then. Compare *Commonwealth* v. *Cutts*, 444 Mass. at 831 (admission of defendant's statements served to advance his theory of diminished capacity without exposing him to cross-examination). Defense counsel's strategy of presenting evidence of the defendant's allegedly coerced confession to the jury for their consideration of the voluntariness of the defendant's confession under the humane practice rule was available to him in any case if the motion had been denied.

4. *Voluntariness of plea*. We analyze separately the judge's findings and rulings that the defendant's plea was coerced. We begin by observing that issues relating to the ineffectiveness of counsel, discussed above, are relevant to the question whether the defendant pleaded guilty knowingly and intelligently. We conclude that the inadequate performance of counsel required the defendant to make a choice whether or not to plead guilty that was not based on an informed view of the evidence against him, and that, therefore, the defendant's plea was not knowing or intelligent. As such it was not erroneous to allow him to withdraw his plea.

We now consider the separate arguments made by the Commonwealth's challenge to the judge's findings and rulings that the defendant's plea was not voluntary, keeping in mind that the judge did not conclude that the defendant received inadequate assistance of counsel. Rather, the judge determined that the advice of counsel to the defendant to plead was not ineffective because both counsel and the defendant believed that Rodriguez and Concepcion would testify effectively against the defendant and that the defendant's confession would be introduced in evidence. Based on these assumptions, and given the defendant's admitted affiliation with Los Solidos, a violent gang, and the sentencing concessions being offered, counsel's tactical choice to advise the defendant to plead appeared to the judge to be

---

defendant at the meeting in the bathroom where the murder was allegedly planned." This lends support to a conclusion that the motion to suppress, if allowed, could have accomplished something material for the defense. See *Commonwealth* v. *Satterfield*, 373 Mass. at 115.

within the *Saferian* standard. We analyze the question of voluntariness on that basis.

The judge's general conclusion was that "at the time of the of the plea, the defendant felt that he had no choice but to plead guilty." The judge also stated: "Because the defendant has convinced me that he was coerced by the unique circumstances at the time that he pleaded guilty, it appears that justice may not have been done." The judge's decision thus was based on the concept of coercion and we must consider whether the facts he found and the evidence presented at the hearing support his conclusion. As stated in *Commonwealth* v. *Decologero*, 49 Mass. App. Ct. at 94, a plea of guilty must be made both voluntarily and intelligently, and the concepts will be examined separately. "The concept of voluntariness requires that the defendant tender the plea free from coercion, duress or improper inducements." *Ibid.*, quoting from *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997).

The findings made by the judge here center around two types of circumstances: (1) the perception of counsel and the defendant about the defendant's chances at trial based on their understanding of the evidence against him; and (2) the conduct of counsel and the defendant's family in exerting pressure on him to plead guilty.

a. *Stress created by plea bargain not enough.* The pressures inherent in the plea bargaining process do not amount to coercion. A plea bargain is not " 'involuntary in a constitutional sense simply because it is the end result of a bargaining process.' [A] certain amount of psychological or emotional pressure (or coercion, if you will) 'is endemic to any system which asks a person to forgo certain rights in order to be spared certain penalties.' " *Commonwealth* v. *Bowen*, 63 Mass. App. Ct. 579, 584 (2005), quoting from *Commonwealth* v. *Damiano*, 14 Mass. App. Ct. 615, 619 (1982). See *Bradshaw* v. *Stumpf*, 125 S. Ct. 2398, 2407 (2005) (plea may be "a knowing, voluntary, and intelligent reaction to a litigation situation that was difficult, to say the least"). The defendant may experience an unbearable sense of injustice but rationally conclude that

he will not be believed by the fact finder, and that those op-
posed to him will be.[18]

Moreover, an individual accused of crime may voluntarily,
knowingly, and understandingly consent to the imposition of a
prison sentence even if he is unwilling or unable to admit his
participation in the acts constituting the crime. See *Alford* v.
*North Carolina*, 400 U.S. 25, 37 (1970); *Huot* v. *Com-
monwealth*, 363 Mass. 91, 95 n.3, 99 (1973).

b. *Overbearing conduct of counsel.* The judge found that,
during the weekend preceding the plea, counsel visited the
defendant and had lengthy conversations with him, advising
him to plead guilty as an accessory to murder in the second
degree. During the same weekend, the defendant's mother and
girlfriend visited him after talking to defense counsel. Accord-
ing to the judge, "[t]hey both told him that they had met with
defense counsel and that they were told that he would likely be
convicted as an accessory to first degree murder and that,
consequently, he would never see his child again. They both
urged him to accept the offer of a plea to second degree
murder." The judge credited the defendant's testimony that he
did not want to plead guilty but that eventually his "will was
overcome by the wishes of his mother and girlfriend as well as
by his attorney's advice." The judge ruled that "at the time of
the plea, the defendant felt that he had no choice but to plead
guilty." The emotional turmoil created by these circumstances
was evident to the judge in the defendant's demeanor at the
plea hearing.

The issue of coercive conduct of counsel in forcing a
defendant to plead guilty, thereby undermining the voluntariness
of the plea, was discussed in *Huot* v. *Commonwealth*, 363 Mass.
at 95-99. On trial for murder, Huot claimed he was coerced by
one of his attorneys[19] to plead guilty after the Commonwealth
presented a strong case against him. The court regarded the

---

[18]Here, the defendant specifically alleged lack of voluntariness while not
challenging the facial adequacy of the plea colloquy. Thus *Commonwealth* v.
*Russell*, 37 Mass. App. Ct. 152, 157 (1994), where the fact of voluntariness
was inferred from the sentencing concessions alone, is not applicable.

[19]Huot had two attorneys, his trial counsel (Hutton) and another attorney
(Murphy). After presentation of the Commonwealth's evidence, Murphy told
him the case was going unfavorably and the jury would "fry his ass," that the

question as an issue of fact and concluded that the terrorizing effect of the advice of one of his attorneys was dissipated by the more dispassionate discussion Huot had with his actual trial attorney. Thus the court viewed the relevant question to be whether counsel merely advised the defendant to plead guilty and the defendant made the choice, or if the conduct of counsel amounted to coercion depriving Huot of the opportunity to choose. That factual issue was resolved against Huot in an evidentiary hearing. But the court did not foreclose the possibility that, if the facts had been as Huot testified, the conduct of his counsel could have invalidated the plea as involuntary.

The court in *Huot, supra* at 97, discussed *Colson* v. *Smith,* 438 F. 2d 1075 (5th Cir. 1971), where "counsel actively tried to convince petitioner to plead guilty in the face of petitioner's repeated protestations of innocence" and where counsel failed to ascertain that his accused client's plea of guilty was voluntarily and understandingly made. *Colson* v. *Smith,* 438 F.2d at 1081. Furthermore, counsel's advice was not based on any evaluation of the defendant's chances had he gone to trial. *Ibid.* The plea was properly invalidated. *Ibid.*

The judge's findings in this case do not distinguish between, on the one hand, the pressures inherent on the defendant, who was (by hypothesis) faced with a strong case against him, and on the other hand, the pressures arising from the conduct of counsel or family members that could actually overwhelm the defendant's will. A painful rational choice to plead in the face of strong evidence is nonetheless a choice. But circumstances can be created that undermine the ability of a defendant to actually exercise his will to make a choice. See, e.g., *Commonwealth* v. *Huot, supra* at 97; *Colson* v. *Smith, supra* at 1081. That distinction was not made by the judge in his findings.

In view of our conclusion, however, that the defendant's plea

---

jury wanted his blood and that he was going to die if he took the stand; and that he would "burn" if he did not change his plea. Murphy told him he had to plead guilty but Huot testified "he didn't believe it," and he wanted to talk to Hutton. Hutton explained the consequences of a change of plea and agreed that the case was going badly, but did not advise Huot to plead guilty. Huot had protested his innocence up to that time. After hearing the evidence against him, Huot agreed that he must have been responsible, although he did not remember beating the victim to death.

was not intelligently or knowingly made due to the ineffective assistance of counsel, there is no need to remand the matter for further factual findings on the issue of voluntariness.

5. *Prejudice to the Commonwealth.* A factor that must be considered in the decision whether to grant a motion for a new trial is the passage of time and whether the Commonwealth's interest in the fair and effective administration of justice will be adversely affected. See *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 637-638 (2001), and cases cited. The Commonwealth presented no evidence or arguments at the hearing relating to its inability to proceed to trial on this indictment. All of the witnesses who might testify to the defendant's alleged criminal role in the matter were participants in the event and were sentenced to terms of imprisonment which do not appear to have expired.[20] Furthermore the defendant has been vigorous in attacking his plea, and as the judge found, the delay in reaching this stage cannot be attributed to him. See note 4, *supra.*

*Conclusion.* For the reasons stated above the order allowing the motion for new trial is affirmed.

*So ordered.*

---

[20]The Commonwealth makes only a general argument on appeal that somehow the availability of witnesses who have been convicted is compromised. It also appears that Rodriguez may no longer be a viable witness.