COMMONWEALTH *vs.* FRANK E. GARCIA, JR.

No. 04-P-12.

Worcester. January 20, 2006. - April 20, 2006.

Present: KANTROWITZ, COHEN, & GRAHAM, JJ.

*Practice, Criminal,* New trial, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

Where a criminal defendant convicted of indecent assault and battery on three separate child victims demonstrated that his trial counsel had provided ineffective assistance by failing to conduct an adequate pretrial investigation and by inexplicably failing to use exculpatory evidence already in his possession regarding one victim, the judge did not abuse his discretion in granting the defendant's motion for a new trial with regard to all three victims. [171-173]

COMPLAINTS received and sworn to in the Leominster Division of the District Court Department, one on June 4 and two on June 5, 2002, respectively.

After transfer to the Fitchburg Division, the cases were tried before *Michael J. Brooks,* J., and a motion for a new trial, filed on May 28, 2004, was heard by him.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

*James L. Sultan (Jonathan P. Harwell* with him) for the defendant.

KANTROWITZ, J. When former trial counsel testified, at a hearing on the defendant's motion for a new trial due to ineffective assistance of counsel, that "it is not my practice to talk to government witnesses" and that he puts on his own witnesses "cold," the first prong of *Saferian*[1] was essentially established.

---

[1] *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974) (to prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's "serious incompetency, inefficiency, or inattention . . . fall[s] measurably

When trial counsel failed to interview and call a witness who, in part, directly contradicted the allegations of a complainant, the judge did not abuse his discretion in allowing the motion, determining that the second prong of *Saferian* was also met.

*Facts.* The defendant, a former part-time teacher at the Piccolo Mondo Learning Center in Leominster (Piccolo Mondo), was charged with, and after a jury trial convicted of, three counts of indecent assault and battery on a child under the age of fourteen years, in violation of G. L. c. 265, § 13B.

Larry, the first complainant, testified at trial that when he was five years old and a student at Piccolo Mondo, Frank Garcia, one of his teachers, made him rub Frank's penis with his hand on about three occasions. He also testified that twice he touched tongues with Frank.[2] He said that when the penis touching occurred, another female teacher was present in the room.

Larry's father testified as a fresh complaint witness. He recalled that while he was playing with his son at home, the child said: "Let's touch tongues like me and Frank do." He said that after further inquiry, the child told him that sometimes Garcia would take off his (the child's) shoes and "have him rub his wiener." The family then contacted the police. The defendant acknowledged that on one occasion he and the child accidentally touched tongues, but said that he told the child afterwards this was "gross" and "don't do that again."[3] The defendant denied he ever made the child "rub" his penis. He was interviewed and booked by the police on May 31, 2002.

On June 4, 2002, the mother of the second complainant, David, then aged six, became aware of the allegations against the defendant. One day later, she reported to the school and the

---

below that which might be expected from an ordinary fallible lawyer" resulting in a likely deprivation to "the defendant of an otherwise available, substantial ground of defence").

[2] At trial, which took place about fourteen months after the alleged incidents, the young witness was unable to identify the defendant. He testified about incidents involving "Frank," a "grown up" at his school. The second complainant, David, who was also unable to identify the defendant in court, also testified about events involving "Frank," an "after school teacher." David testified he saw Frank earlier in the courthouse, but when asked if he saw him in the courtroom, he indicated he did not. The third complainant, Victor, identified the defendant.

[3] Evidence was introduced concerning Larry's habit of trying to lick others.

police that her son had told her on May 30, 2002, that the defendant had also touched tongues with him.

David testified at trial that he and "Frank" touched tongues in the classroom,[4] and that "Frank," on more than one occasion, rubbed "my crotch."[5] The defendant, in his testimony, denied all the allegations with regard to David.

The third complainant, Victor, testified at trial that when he was six years old and a student at Piccolo Mondo, the defendant played with his privates after Victor had a bout of diarrhea and the defendant had cleaned him up in the bathroom. He further said that he knew the defendant was playing with his privates because he could see no more diarrhea on himself.[6] Victor's mother confirmed that her son had soiled himself with diarrhea at school on or about April 11, 2002. She said that Victor had not revealed to her that the defendant allegedly played with her son's privates until June 4. On that date, she questioned her son regarding any inappropriate touching at school, after she had received a note from the school regarding other allegations against the defendant. The defendant confirmed that he cleaned Victor in the bathroom and agreed that he had to touch the boy's penis and scrotum in the process. He was wearing rubber gloves at the time and denied touching the boy for any purpose other than to clean him.

In his motion for a new trial, the defendant alleged numerous shortcomings of trial counsel, including failure (1) to retain an investigator; (2) to interview prospective trial witnesses; (3) to

[4]As per a bill of particulars, a June 25, 2002, Department of Social Services (DSS) investigative report, and his sexual abuse intervention network (SAIN) interview, these were David's sole allegations against the defendant.

[5]A doctor's report, written after a medical examination on June 17, 2002, mentioned that the mother called the doctor after the examination and told her about David's additional disclosure. A police report, which was made available to counsel, made no mention of this disclosure. The police report indicated, however, that on September 4, 2002, the mother called Detective Aubuchon and informed him that (1) her son had recently disclosed that one day at school Garcia asked him to see his private area, to which David responded "no"; and (2) David further told her that he informed Karen Crumbley, his babysitter and a teacher at the school, about this alleged incident. Crumbley, however, in an investigative DSS interview pursuant to G. L. c. 119, § 51B, denied that David ever told her of this incident. Counsel did not exploit these inconsistencies.

[6]As with David's and Larry's SAIN interviews, Victor's also contained inconsistencies which counsel, as before, did not exploit.

obtain the necessary services of an expert[7]; (4) to call exculpatory witnesses; (5) to present prior inconsistent statements and other evidence casting doubt on the credibility of the complainants; and (6) to raise an important variance between the bill of particulars and the evidence presented at trial as to one of the complainants (David). In addition, the defendant alleges that counsel introduced "photographs during Garcia's direct examination, which Garcia had never seen before and which had been taken after important physical alterations had been made to the classroom where the charged abuse allegedly occurred. To make matters worse, defense counsel did not object to the prosecutor's use of surprise photographs, not disclosed prior to trial, in cross-examining Garcia, further damaging his credibility in the eyes of the jury."

In his decision on the motion for a new trial, the judge, who was also the trial judge, ruled that counsel was indeed ineffective. Specifically, the judge focused upon defense attorney's failure to conduct adequate pretrial investigation and preparation as a major shortcoming with regard to Karen Crumbley, not only a teacher at the school, but also David's babysitter since 1998. The judge criticized counsel's "failure to interview [her as] a prospective witness" and to "investigate a defense" that would have resulted from that interview as well as from the attorney's consideration of reports by the police and the Department of Social Services (DSS) that were provided to him.[8] The judge also noted that, contrary to the Commonwealth's assertions, these omissions could not be justified as reasonable

---

[7]Appellate counsel retained the services of an expert who opined that the case was characterized by biased investigation and suggestive questioning, and that the parents' reports were unreliable.

[8]With his 2004 motion for a new trial, the defendant filed an affidavit by Karen Crumbley, in which she stated that she has known David as a preschool teacher and babysitter since 1998; she babysat him on June 4, 2002, the day his mother informed the school about the allegations David had made against the defendant several days before on May 30, 2002; on June 4, she took a long walk with David and the family dog and "asked every way I could think of about the allegation without using leading questions. David stated over and over again that nothing had happened"; that after David's mother came home, David disclosed to them both that last Thursday "[he had] kicked a classmate in the privates while [they] were playing"; that, with his mother present, and further questioning as to whether anything else had occurred on Thursday regarding David's head, face, and mouth, he responded that "Frank put his

tactical decisions because the attorney's failure even to interview Crumbley as a potential witness did not put him in a position to make a tactical decision with regard to her testimony. In addition, the judge said that the attorney's unjustified failure to retain the services of an investigator contributed to his ineffective assistance of the defendant.

*Law.* "On the Commonwealth's appeal of the grant of a defendant's motion for a new trial, we consider whether the judge committed a significant error of law or abuse of discretion in allowing the defendant's motion. *Commonwealth* v. *Martin*, 427 Mass. 816, 817-818 & n.2 (1998)." *Commonwealth* v. *Alvarez*, 433 Mass. 93, 100-101 (2000). The appellate court "pay[s] special deference to a decision on a motion for new trial where the motion judge was also the trial judge." *Commonwealth* v. *Whitney*, 63 Mass. App. Ct. 351, 356 (2005), citing *Commonwealth* v. *Myers*, 51 Mass. App. Ct. 627, 632 (2001). See *Commonwealth* v. *Acevedo*, 446 Mass. 435, 441-442 (2006).[9]

*Discussion.* While the lack of adequate investigation can form the basis of a finding of ineffective assistance of counsel, *Commonwealth* v. *Berrios*, 64 Mass. App. Ct. 541, 549-550 (2005), citing *Commonwealth* v. *Alvarez*, 433 Mass. at 102,[10] it appears here that counsel already had in his possession exculpatory evidence that he inexplicably failed to use. It was revealed

tongue on my tongue"; and that "[a]t this point, [the mother] was right in front of David's face nodding her head up and down, encouraging him to talk." She lastly averred that David told her that "probably two of his friends" were present at the time. The next day, Karen Crumbley said she related the entire story to a Leominster police detective.

[9]The law concerning ineffective assistance of counsel is well known. See note 1, *supra*. See also *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) (to satisfy second prong of ineffective assistance claim, defendant must show that "better work might have accomplished something material for the defense"); *Commonwealth* v. *Urena*, 417 Mass. 692, 699 (1994) (defendant must show "actual prejudice").

[10]The decision of defense counsel "not to investigate must be directly assessed for reasonableness in all the circumstances." *Commonwealth* v. *Alvarez*, *supra* at 102, quoting from *Strickland* v. *Washington*, 466 U.S. 668, 691 (1984). " 'Strategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on investigation.' " *Wiggins* v. *Smith*, 539 U.S. 510, 533 (2003), quoting from *Strickland* v. *Washington*, *supra* at 690-691.

at the evidentiary hearing that, prior to trial, counsel had received documents containing Crumbley's statements, which were of clear significance to the defense. Had she been called as a witness, Crumbley would have testified that David, despite her coaxing, did not implicate the defendant, and that he did so only after his mother appeared, which supported a defense theory of parental influence and pressure. Counsel's failure even to attempt to speak with Crumbley was a grievous shortcoming, especially in a case that lacked any physical evidence or injury, and where credibility was the sole issue.[11]

The Commonwealth contends that counsel's choice not to call Crumbley was a reasonable tactical decision in that she would have testified that David ultimately did accuse the defendant. The judge discounted this argument because counsel not only never spoke with Crumbley, but failed to review her statements that had been provided to him in pretrial discovery. As a result, he was never in a decision-making position with regard to her testimony, and he could not weigh the benefits of her trial testimony against the harm it could potentially cause the defendant.[12] We discern no error in the judge's analysis.

Counsel conceded that "if I knew that the child had made a statement to Karen Crumbley denying an incident, then I probably would have put her on the witness list . . . yes, an ordinary diligent lawyer would summons a witness with a contradictory statement . . . ."

Unfortunately, this omission fell within counsel's general strategy of "preparing" for trial. He acknowledged that it was not his practice to speak to witnesses before trial, saying, "I usually try to put them on cold. If I talk to them at all, it's [*sic*] fundamentals of testifying." Asked how he would know whom to call as a witness in the absence of any investigation on his part, he answered, "I always interview my client." On its face, this view of pretrial investigation is manifestly unreasonable

---

[11]Counsel also had both police and DSS reports prior to trial. See *Commonwealth* v. *Phinney*, 446 Mass. 155, 163 (2006).

[12]Counsel's after-the-fact reasoning that had Crumbley testified at trial, the prosecution would have discredited her because she was an employee of the school is unavailing. The same logic did not deter him from calling Laurie King and Laurie LeBlanc, two teachers from the school, as well as the school's director Maria Cupo, as trial witnesses for the defense.

and, in this case, resulted in the "forfeiture of a substantial defense."[13] See *Commonwealth* v. *Acevedo*, *supra*.

Lastly, the Commonwealth asserts that the bulk of the judge's disapproval of counsel's performance centered around David; as such, even if it were permissible to allow the motion for a new trial as to the count concerning that child, it should not affect the convictions concerning the other two children. The judge disagreed, reasoning that "[i]f a reasonable doubt had been successfully raised regarding one of the children, this could have affected the jury's perspective on the testimony of the two other child witnesses." Given the flaws and defenses in those cases, e.g., Larry's failure of identification and his tendency to lick others, and the plausible explanation (diarrhea) for touching Victor, not to mention the contradictory statements of the two young witnesses, we cannot say that the judge abused his discretion by ordering a new trial on all three complaints.[14]

*Order allowing motion for new trial affirmed.*

---

[13]See, as noted by the trial judge, Mass.R.Prof.C. 1.1, 426 Mass. 1308 (1998), which requires, among other things, competent representation, legal knowledge, skill, thoroughness, and adequate preparation.

[14]If we were to fault the judge, it would be in his assessment, in footnote 3 of his ruling on the defendant's motion for a new trial, that despite the numerous other occasions where counsel's performance fell below the standard of an ordinarily fallible lawyer, better work there would not have accomplished something material. In reviewing counsel's efforts on at least some of the other issues, it appears that better work would have been highly advantageous to the defense.